**NOT FOR PUBLICATION**

**FILED**
JAMES J. WALDRON, CLERK

**JANUARY 11, 2010**

U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY:  s/ Ronnie Plasner, DEPUTY

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re: | Case No.: 05-39171 (DHS) |
| **NICHOLAS A. MATTERA**, | Adv. No. 07-01216 (DHS) |
| Debtor. | Judge: Donald H. Steckroth, U.S.B.J. |
| **CATHERINE ROMANIA**, | |
| Plaintiff, | |
| v. | |
| **NICHOLAS A. MATTERA**, | |
| Defendant. | |

**OPINION**

**APPEARANCES:**

Becker Meisel LLC
Ben H. Becker, Esq.
Eisenhower Plaza II
354 Eisenhower Parkway, Suite 1500
Livingston, New Jersey 07039
(973) 422-1100
*Counsel for Plaintiff*

Rabinowitz, Lubetkin & Tully, L.L.C.
Mary Ellen Tully, Esq.
293 Eisenhower Parkway, Suite 100
Livingston, NJ 07039
*Counsel for Defendant*

**THE HONORABLE DONALD H. STECKROTH, BANKRUPTCY JUDGE**

Before the Court are opposing motions for summary judgment in an adversary proceeding brought to declare certain debts non-dischargeable under §§ 523(a)(5) and 523(a)(15). The motion of the Plaintiff, Catherine Romania ("Romania" or "Plaintiff"), is premised on neither of the aforementioned sections, but instead on the argument that her right to equitable distribution arose post-petition and is, therefore, not discharged by the Debtor's chapter 7 bankruptcy. The Plaintiff contends that her right to payment for equitable distribution was not a "claim" as contemplated by the Bankruptcy Code until the order for equitable distribution was entered, which occurred after the petition date. The Debtor, Nicholas Mattera ("Debtor"), argues that Romania's right to payment for equitable distribution ripened into a claim upon entry of the judgment of divorce or, in the alternative, that Romania is judicially estopped from taking her current position since she benefitted from inconsistent arguments in previous proceedings before this Court. Thus, the threshold issue before the Court is whether an equitable distribution claim arises pre- or post-petition where the judgment of divorce was entered pre-petition, but the order fixing the claim for equitable distribution was entered during the pendency of the bankruptcy. For the reasons that follow, the Court holds that the Plaintiff's claim for equitable distribution accrued upon entry of the judgment of divorce and, therefore, is a pre-petition debt—even though it was not liquidated to a precise dollar amount until after the petition date. Consequently, partial summary judgment is granted to the Debtor/Defendant and against the Plaintiff.

**Facts and Procedural History**

The relevant facts are not in dispute. Romania and the Debtor are former spouses who have pursued protracted divorce litigation for more than ten years. Romania commenced the litigation in May of 2005 by filing a complaint for divorce in the Superior Court of New Jersey, Chancery Division, Family Part, Passaic County. In September of 2001, the state court issued an oral judgment of divorce, followed by a written judgment in January of 2002. Although the divorce judgment legally dissolved the parties' marriage, it did not address the equitable distribution of marital property or other financial issues. In August of 2004, the state court entered a consent order for equitable distribution purposes establishing the stipulated value of the Debtor's law practice and Romania's share thereof. A trial had been scheduled in the state court on the remaining issues when the Debtor filed for chapter 11 bankruptcy protection on September 9, 2005.

On October 11, 2005, Romania filed a motion to dismiss the Debtor's bankruptcy or to vacate the automatic stay. This Court denied the motion to dismiss but granted limited stay relief to continue the state court litigation fixing the equitable distribution award and for Romania to pursue a tort claim against the Debtor up to and including final judgment. On December 22, 2006, the state court entered an amended dual final judgment that fixed the parties' claims for equitable distribution. On January 11, 2007, the state court entered an order imposing a constructive trust over the Parties' marital assets. The Debtor filed a motion with this Court seeking a determination that the January 2007 order violated the automatic stay and was void *ab initio*. On February 21, 2007, this Court issued an opinion declaring that Romania's violation of the automatic stay was willful and that the state court's order imposing a constructive trust was void *ab initio*.

Romania initiated the instant adversary proceeding seeking non-dischargeability of certain debts pursuant to §§ 523(a)(5) and 523(a)(15) on February 16, 2007 (*Adv. Pro. No.* 07-1216 DHS). On April 16, 2007, the Plaintiff filed a second adversary proceeding seeking a declaration that the marital assets are not property of the bankruptcy estate (Adv. Pro. No. 07-1404 DHS). On September 16, 2008, the Debtor's case was converted from chapter 11 to chapter 7 and Joseph Newman was appointed interim chapter 7 Trustee. On March 21, 2009, the Court approved a settlement between the Trustee and Romania resolving her claim for equitable distribution solely against the bankruptcy estate, except as provided otherwise. Pursuant to that settlement, the second adversary proceeding was resolved.

## Discussion

### I. Summary Judgment Standard

A court may grant summary judgment under Federal Rule of Civil Procedure 56(c), made applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7056, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* At the summary judgment stage, the role of the court "is not to weigh evidence, but to determine whether there is a genuine issue for trial." *Knauss v. Dwek*, 289 F. Supp. 2d 546, 549 (D.N.J. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The court must construe facts and inferences in a light most favorable to the non-moving party. *See Am. Marine Rail NJ, LLC v. City of Bayonne*, 289 F. Supp. 2d 569, 578 (D.N.J. 2003) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986)). "Only evidence admissible at trial may be used to test a summary judgment motion.

Thus, evidence whose foundation is deficient must be excluded from consideration." *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 471 (3d Cir. 1989) (citations omitted).

The moving party must make an initial showing that there is no genuine issue of material fact. *See Knauss*, 289 F. Supp. 2d at 549 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The burden then shifts to the non-moving party to "'make a showing sufficient to establish the existence of [every] element essential to the party's case, and on which that party will bear the burden of proof at trial.'" *Cardenas v. Massey*, 269 F.3d 251, 254-55 (3d Cir. 2001) (questioned on other grounds) (quoting *Celotex Corp.*, 477 U.S. at 322). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original). An issue of fact is "genuine" if a reasonable juror could return a verdict for the non-moving party. *See id.* at 248. Furthermore, a material fact is determined by the substantive law at issue. *See Crane v. Yurick*, 287 F. Supp. 2d 553, 556 (D.N.J. 2003) (citing *Anderson*, 477 U.S. at 248). A fact is "material" if it might affect the outcome of the suit under governing law. *Id.* Disputes over irrelevant or unnecessary facts are insufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 248 (citation omitted).

However, even if material facts remain disputed, summary judgment may be proper if, after all inferences are drawn in the non-moving party's favor, the moving party is entitled to judgment as a matter of law. *Id.* at 248-50. Such a judgment is appropriate "as a matter of law" when the non-moving party has failed to make an adequate showing on an essential element of his or her case, as to which he or she has the burden of proof. *See Celotex Corp.*, 477 U.S. at 322-23. On the other

hand, a court must deny a motion for summary judgment when a genuine issue of material fact remains to be tried, or where the moving party is not entitled to a judgment as a matter of law.

## II.    Whether Romania's Equitable Distribution Claim Arose Post-Petition

It is important to first note that the complaint in the underlying adversary proceeding pleads non-dischargeability under §§ 523(a)(5) and 523(a)(15). Nowhere does Romania plead the argument before the Court and, as such, her present motion can best be viewed in the light most favorable to her as an amendment to the complaint rather than a motion for summary judgment. Notwithstanding the procedural impropriety of the motion, the Court will nonetheless address the merits.

Romania argues that "[a] claim for equitable distribution that has not been reduced to judgment prior to the filing of a bankruptcy petition by the non-debtor spouse is not a dischargeable claim. (Mem. of Law in Supp. of Pl's. Mot. for Summ. J ("Pl's. Mem") 4). Although not cited in her supporting memorandum, presumably Romania relies on § 727(b), which states in relevant part: "Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts *that arose before the date of the order for relief* under this chapter." 11 U.S.C. § 727(b) (emphasis added).

Section 101(12) defines a "debt" as "liability on a *claim*." 11 U.S.C. § 101(12) (emphasis added). Section 101(5) defines "claim" as the "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5). Thus, if Romania had a "claim" for equitable distribution, as defined by § 101(5), before the Debtor filed for bankruptcy,

7

then that claim, now reduced to judgment, would clearly be a pre-petition debt that is dischargeable under § 727 unless exempted by another section.

It is well established that bankruptcy courts must look to state law to determine property rights in the absence of controlling federal authority. *Butner v. United States*, 440 U.S. 48, 54 (1979) ("Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law"). In that vein, the Third Circuit has held that when a "right to payment" accrues under § 101(5)[1] is a question of state law. *Avelino & Bienes v. M. Frenville Co.* (*In re Frenville*), 744 F.2d 332, 337 (3d Cir. 1984). Thus, the Court begins with an examination of New Jersey's statutory scheme regarding the property rights of divorced or divorcing spouses. Specifically, N.J. Stat. Ann. § 2A:34-23 states that "in all actions where a judgment of divorce . . . is entered the court may make such award or awards to the parties, in addition to alimony and maintenance, to effectuate an equitable distribution of the property." N.J. Stat. Ann. § 2A:34-23. The New Jersey Supreme Court has interpreted this to mean that "[b]y the plain terms of the statute, a spouse's right to share in marital property by virtue of equitable distribution arises when 'a judgment of divorce . . . is entered.'" *Carr v. Carr*, 120 N.J. 336, 342, 576 A.2d 872, 875 (1990) (quoting *Painter v. Painter*, 65 N.J. 196, 216 n. 5, 320 A.2d 484 (1974)). Thus, a judgment of divorce establishes an unliquidated claim for equitable distribution under New Jersey law.

Judge Winfield of this district examined a similar issue in *Buglione v. Berlingeri*, which both parties rely on heavily. *Buglione v. Berlingeri* (*In re Berlingeri*), 246 B.R. 196 (Bankr. D.N.J. 2000). The issue in *Berlingeri* was whether a claim for equitable distribution was a pre-petition debt where the plaintiff had filed for divorce before the debtor filed for bankruptcy but the judgment for

---

[1] Then §101(4).

divorce *and* the equitable distribution award were rendered after the bankruptcy filing. *Id.* at 198. After a nearly identical analysis to the one conducted by this Court, Judge Winfield concluded that "once a divorce proceeding is commenced, both parties have a right to seek equitable distribution." *Id.* at 200.

In the instant case, the judgment of divorce was entered before the Debtor's bankruptcy filing. Accordingly, Romania's claim for equitable distribution is a pre-petition debt, even though it was not fixed or liquidated until after the petition date. Consequently, the Court hereby grants partial summary judgment in favor of the Debtor and against Romania on the grounds that Romania's claim for equitable distribution is a pre-petition debt with litigation to continue to determine the dischargeability of the debt pursuant to §§ 523(a)(5) and 523(a)(15).

### III.   Judicial Estoppel

Finally, the Debtor urges the Court to rule against Romania on the alternative ground of judicial estoppel. Although the Court is persuaded that Romania has taken inconsistent positions regarding when the Debtor's liability accrued on her claim for equitable distribution, the doctrine of equitable estoppel is inapplicable to the present case because Romania did not benefit from those arguments in previous proceedings.

Judicial estoppel is a doctrine that enables courts to bar a party from benefitting from inconsistent arguments in order to protect the integrity of the judicial process. *See, e.g., Zedner v. United States*, 547 U.S. 489, 504, (2006). While the precise standard for judicial estoppel varies among jurisdictions, in the Third Circuit, invocation of the doctrine requires (i) "the party to be estopped must have taken two positions that are irreconcilably inconsistent" *Montrose Medical*

9

*Group Participating Savings Plan v. Bulger*, 243 F.3d 773 (3d Cir. 2001).; (ii) the change in position must have been "in bad faith—i.e., with intent to play fast and loose with the court" *Id.*; and (iii) no lesser remedy would adequately address the misconduct and it must be "tailored to address the harm identified." *Id.* at 780. Additionally, the Third Circuit requires that the court accepted the previous, inconsistent position and that the party to be estopped benefitted from it. *U.S. v. Pelullo*, 399 F.3d 197, 223 (3d Cir. 2005) ("'Absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations, and thus poses little threat to judicial integrity.'" (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750-51(2001))).

In the present case, the Debtor cites several instances where Romania argued that her equitable estoppel rights vested pre-petition upon the judgment of divorce in support of her motion to dismiss and in her appeal from this Court's order denying her motion to dismiss as well as from the Court's 2006 clarifying order. However, in each instance, the Court rejected Romania's prior inconsistent position and denied the relief she sought. Thus, although Romania has taken inconsistent positions throughout this litigation, the application of judicial estoppel to the issue *sub judice* is inapplicable because there is no danger that she benefitted from these inconsistencies.

## Conclusion

For the reasons stated herein, the Court holds that Romania's claim for equitable distribution arose pre-petition. Partial summary judgment is granted to the Debtor and against Romania.

An Order in conformance with this Opinion has been entered by the Court and a copy is attached.

*/s/ Donald H. Steckroth*

_____
DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE

Dated: January 11, 2010